UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES FREEMAN, et al.,<br>Plaintiffs,<br>v.<br>3COMMAS TECHNOLOGIES OU,<br>Defendant. | Case No. 23-cv-00101-RFL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FOR *FORUM NON CONVENIENS***<br><br>Re: Dkt. Nos. 76, 86 |

Plaintiffs, three California residents and ten out-of-state residents, are cryptocurrency traders. 3Commas Technologies OU is an Estonian corporation that facilitates automatic cryptocurrency trading. Plaintiffs used 3Commas's services, which required 3Commas to store keys generated by Plaintiffs' cryptocurrency exchange platforms. But according to Plaintiffs, 3Commas failed to adequately secure those keys, allegedly allowing a hacker to steal them. Plaintiffs say that caused them to suffer up to hundreds of thousands of dollars in damages due to fraudulent transactions. The Ninth Circuit held that Plaintiffs sufficiently alleged personal jurisdiction over 3Commas. *Freeman v. 3Commas Techs. OU*, No. 24-6158, 2026 WL 579391, at *2 (9th Cir. Mar. 2, 2026). 3Commas now moves to dismiss for *forum non conveniens*, or alternatively, as to the non-California Plaintiffs, for lack of personal jurisdiction. 3Commas has established that Plaintiffs entered into its Terms of Use, which contains a forum selection clause. While that forum selection clause is enforceable as to the non-California Plaintiffs, it is not enforceable as to the California Plaintiffs. Accordingly, as further detailed below, 3Commas's

motion is **GRANTED IN PART** and **DENIED IN PART**.[1]

## I. BACKGROUND

The 3Commas registration page notifies users of its Terms of Service. (Dkt. No. 20 ¶ 7.) The layout of the registration page has changed over time, evolving from a clickwrap to a sign-in wrap. (*See id.* ¶ 8; Dkt. No. 20-1 at 2; Dkt. No. 20-3 at 2.)[2] For instance, in October 2018, the registration page contained a checkbox stating, "I agree to Terms of service and Privacy policy," with "Terms of service" in blue (Dkt. No. 20 ¶ 10; Dkt. No. 20-3 at 2):




In June 2020, the registration page contained a checkbox stating, "I accept the Privacy Policy and Terms&Conditions." (Dkt. No. 20 ¶ 12; Dkt. No. 20-5.) All of that text was

[1] Because *forum non conveniens* requires dismissal of the non-California Plaintiffs' claims, this Order does not reach 3Commas's alternative personal jurisdiction argument. *See Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007).

[2] All citations to page numbers in filings on the docket refer to ECF pagination.

displayed in white:




As of October 2023, the registration page contained an advisal stating, "By clicking 'Sign Up' you agree to Terms of Use and Privacy Policy" (Dkt. No. 20 ¶ 7; Dkt. No. 20-1 at 2):




Additionally, if a user registers for a paid plan, they must enter a payment method. (Dkt. No. 20 ¶ 5.) When users "first enter a method of payment, or update their method of payment," they must check a box that states, "I accept Terms of use and agree to payment amount and

accept Recurring Payment Policy and Refund Policy," with "Terms of use" in blue (*id.* ¶ 16; Dkt. No. 20-9 at 2):




Every version of the 3Commas Terms included a forum selection clause. (Dkt. No. 20 ¶ 48.) While the Terms generally required resolution of disputes in Estonia, some versions required resolution of disputes in Canada. (*Id.*; *see, e.g.*, Dkt. No. 20-14 ¶ 19(g).) As of October 26, 2022, the forum selection clause read as follows (Dkt. No. 20-13 ¶ 23.7):

> These Terms of Use, the Purchase Agreement and any contractual or non-contractual disputes arising out of or in connection with the use of the Software will be governed by and in accordance with Estonian law and settled in Harju County Court (Estonia).

## II. LEGAL STANDARD

A motion to dismiss for *forum non conveniens* typically requires showing that a plaintiff's choice of forum should be disturbed because there is an adequate alternative forum and a set of private interest factors and public interest factors strongly weigh in favor of dismissal. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981); *Ayco Farms, Inc. v. Ochoa*, 862 F.3d 945, 950 (9th Cir. 2017) (citation omitted). The private interest factors are: "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access

to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) 'all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Ayco Farms*, 862 F.3d at 950 (citation omitted). The public interest factors are: "(1) the local interest of the lawsuit; (2) the court's familiarity with governing law; (3) the burden on local courts and juries; (4) the amount of congestion in the court; and (5) the costs of resolving a dispute unrelated to the forum." *Id.* (cleaned up).

But if a defendant establishes a valid forum selection clause, it "should be given controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) (cleaned up). That changes the analysis in two ways. First, "the plaintiff's choice of forum merits no weight," and the plaintiff bears the burden of establishing that dismissal is unwarranted. *Id.* Second, courts must "deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* at 64. Accordingly, to avoid dismissal, the plaintiff must show either that the public interest factors "overwhelmingly disfavor" enforcement of the forum selection clause or one of three extraordinary circumstances: "(1) the clause is invalid due to 'fraud or overreaching,' (2) 'enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision,' or (3) 'trial in the contractual forum will be so gravely difficult and inconvenient that [the litigant] will for all practical purposes be deprived of his day in court.'" *Id.* at 67; *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 18 (1972)).

When considering a motion to dismiss for *forum non conveniens* based on a forum selection clause, "the trial court must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004); *AMA Multimedia LLC v. Sagan Ltd.*, No. 16-CV-01269-DGC, 2020 WL 4284364, at *2 n.3 (D. Ariz. July 27, 2020) (holding that this legal standard articulated in *Murphy* continues to apply when evaluating motions to dismiss premised

on a forum selection clause after *Atl. Marine*).

## III. DISCUSSION

### A. Formation

The parties agree that whether Plaintiffs assented to the Terms can be decided by reference to California law.[3] (*See* Dkt. No. 86 at 14; Dkt. No. 87 at 12.) 3Commas does not contend that Plaintiffs had actual knowledge of the Terms, so it must show that they were on inquiry notice of the Terms. *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). Under California law, "an enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Id.* (citations omitted).

3Commas has established that Plaintiffs agreed to the Terms of Use. For all Plaintiffs except Charles Freeman, 3Commas identified their date of registration, a screenshot of the registration page as of that month, and any dates upon which they updated their payment method. (Dkt. No. 20 ¶¶ 9–14, 18–47.) 3Commas was unable to identify Freeman's account, but Freeman alleges he has a paid account, and 3Commas explains that he must have seen an advisal about the Terms upon registration and adding his payment method. (*Id.* ¶¶ 5, 16, 48; Dkt. No. 75 ¶ 42.) Except for Freeman, Vincent Van Buskirk, and Nandan Arora,[4] Plaintiffs assented to the

[3] It is not clear whether federal common law or state law governs the question of contract formation when attempting to enforce a forum selection clause. *Compare Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988) (holding that "because enforcement of a forum clause necessarily entails interpretation of the clause before it can be enforced, federal law also applies to interpretation of forum selection clauses"), *with DePuy Synthes Sales, Inc. v. Howmedica Osteonics Corp.*, 28 F.4th 956, 964 nn.5–6 (9th Cir. 2022) (collecting district court cases applying state law to contract formation, but declining to reach the issue). Since the parties do not contest the applicable principles, this Order does not reach that question.

[4] The June 2020 registration page seen by Arora and Van Buskirk did not provide reasonably conspicuous notice, as the "Terms&Conditions" link was "plain-looking text" that did not indicate the existence of a hyperlink. (*See* Dkt. No. 20 ¶¶ 12, 31, 40; Dkt. No. 20-5 at 2; *Berman*, 30 F.4th at 857.) In order to draw all reasonable inferences in Freeman's favor, this order presumes that Freeman saw this June 2020 registration page, since 3Commas has not

Terms when registering, because the registration page's advisal gave reasonably conspicuous notice of the hyperlinked Terms, and the page either contained a checkbox demonstrating assent or explained that registration would constitute assent. *See Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515–17 (9th Cir. 2023). Additionally, Plaintiffs must have clicked through the payment method update screen one or more times, as they allege that they paid for a subscription, and 3Commas presented evidence that some later updated their payment method. (*See* Dkt. No. 20 ¶¶ 5, 16, 19, 23, 25, 28, 32, 35, 41, 44, 46; Dkt. No. 75 ¶¶ 4, 42–54.) Plaintiffs do not submit evidence disputing that they viewed this screen or its equivalent when updating their payment method. For the same reason that the registration page demonstrated assent, Plaintiffs assented to the Terms by adding or updating their payment method. *See Oberstein*, 60 F.4th at 515–17.

### B. Enforceability

#### 1. California Plaintiffs

The California Plaintiffs contend that enforcement of the forum selection clause would "contravene a strong public policy of" California. *See Advanced China Healthcare*, 901 F.3d at 1088 (quoting *M/S Bremen*, 407 U.S. at 15).

As an initial matter, the parties dispute whether Plaintiffs bear the burden to show that enforcement of the forum selection clause would contravene California's public policy, or whether 3Commas bears the burden to show that enforcement would be consistent with California's public policy. Under federal law governing *forum non conveniens* motions, a plaintiff who "defy[s] the forum-selection clause" "bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Atl. Marine*, 571 U.S. at 63; *M/S Bremen*, 407 U.S. at 15 (requiring the plaintiff to "clearly show that enforcement would be unreasonable and unjust"). California law typically mirrors that standard but flips the burden of proof to the defendant where the plaintiff invokes a statutory anti-waiver provision. *Am. Online,*

---

provided evidence regarding when Freeman registered and it is the least conspicuous version of the notice he would have seen.

*Inc. v. Superior Ct.*, 90 Cal. App. 4th 1, 10–11 (2001). In such cases, the defendant must "show [that] enforcing the forum selection clause will not diminish [the plaintiff's] substantive rights in any way." *Verdugo v. Alliantgroup, L.P.*, 237 Cal. App. 4th 141, 151 (2015).

To a certain extent, both parties are correct. Federal procedural law governs the enforcement of forum selection clauses in federal court, and requires Plaintiffs to bear the burden to show that enforcement of the forum selection clause would contravene California's public policy. *See Atl. Marine*, 571 U.S. at 63; *M/S Bremen*, 407 U.S. at 15. That generally means Plaintiffs must identify (a) specific differences between litigation in California and litigation in the agreed upon forum and (b) a "statute or . . . judicial decision" declaring those differences to violate California's public policy. *See M/S Bremen*, 407 U.S. at 15. However, in order to determine whether California statutes or judicial decisions declare that California's public policy has been violated, federal courts must look to California law articulating the public policy at issue and when it is violated. As relevant here, California public policy (1) "strongly favors consumer class actions" and (2) prohibits "waivers of consumer rights under the CLRA [Consumers Legal Remedies Act]." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083–84 (9th Cir. 2009) (first citing *Am. Online*, 90 Cal. App. 4th at 15, 17–18; and then citing Cal. Civ. Code § 1751). Those public policies apply to "California residents." *Id.* at 1084.

Starting with the former, the California Plaintiffs have shown that enforcement of the forum selection clause would violate California's public policy strongly favoring consumer class actions. A declaration submitted by 3Commas demonstrates that the procedures underlying class actions in Estonia[5] (called consumer representative actions and implemented pursuant to a European Union directive) are significantly different than those in California. (Dkt. No. 77.) First, individuals cannot bring representative actions. (*Id.* ¶ 11.) Only government entities,

[5] 3Commas acknowledges that Freeman might have agreed to a version of the Terms of Service selecting Canada as the forum to resolve disputes but asserts that he would have agreed to later versions that changed that selected forum to Estonia. Neither party has put in evidence regarding Canadian law. Assuming without deciding that Freeman agreed to resolve disputes in Estonia as 3Commas contends, the forum selection clause still cannot be enforced against him for the same reasons that it cannot be enforced against the other California Plaintiffs.

corporations, NGOs, and other similar organizations can act as representatives. (*Id.*) Moreover, in order to lawfully act as a representative, such an organization must apply to be placed on a list or be admitted on an ad hoc basis. (*Id.*) California and federal law impose no such restrictions on class representatives. *See* Cal. Civ. Proc. Code § 382; Fed. R. Civ. P. 23(a). Second, and more significantly, absent consumers must opt in to Estonian representative actions. (Dkt. No. 77 ¶ 17.) That is the exact opposite of California and federal class actions, which are opt-out proceedings. *See* Cal. R. Ct. 3.766(c); Fed. R. Civ. P. 23(c). And the opt-out model is a "fundamental" feature of California and federal class actions. *See Avery v. TEKsystems, Inc.*, 165 F.4th 1219, 1231 (9th Cir. 2026); *Hypertouch, Inc. v. Superior Ct.*, 128 Cal. App. 4th 1527, 1543–50 (2005).

Estonian procedures therefore do not offer "the essential benefits of the class action format" protected by California public policy. *See N.Z. v. Fenix Int'l Ltd.*, No. 24-CV-01655-SSC, 2025 WL 1122493, at *6 (C.D. Cal. Apr. 9, 2025) (citation omitted) (collecting cases discussing similar procedures in other European countries). Plaintiffs could not bring a collective action on their own in Estonia. (*See* Dkt. No. 77 ¶ 11.) Even if they found an organization to sue on their behalf, the action would not provide any monetary remedy to 3Commas users who did not individually opt in. (*See id.* ¶ 17.) California's public policy precludes enforcing the forum selection clause as to both the statutory and common law claims asserted by the California Plaintiffs. *See Am. Online*, 90 Cal. App. 4th at 17 (citing, as a "notable example" of California courts "extoll[ing]" consumers' "right to seek class action relief," *Vasquez v. Superior Ct.*, 4 Cal. 3d 800 (1971), which allowed common law fraud claims to proceed in a class action); *but see Baton v. Ledger SAS*, No. 21-17036, 2022 WL 17352192, at *2 (9th Cir. Dec. 1, 2022) (declaring forum selection clause unenforceable only as to "consumer law claims").

California's second public policy separately precludes enforcement of the forum selection clause as to the CLRA claim. The CLRA declares that "[a]ny waiver by a consumer of the provisions of this title is contrary to public policy and shall be unenforceable and void." Cal.

Civ. Code § 1751. 3Commas contends this anti-waiver provision cannot apply because it does not provide a "good[]" or "service[]," meaning it is not regulated by the CLRA. *See* Cal. Civ. Code § 1761(a)–(b). For purposes of this motion, 3Commas accepts Plaintiffs' allegations as true. (*See* Dkt. No. 86 at 17–19.) Taking those allegations as uncontested evidence, Plaintiffs have shown that 3Commas performs "work, labor, [or] services for other than a commercial or business use." *See* Cal. Civ. Code § 1761(b). Software can sometimes provide a service, such as Yahoo: a "web-based platform" that is continuously updated and allows users to send communications to others. *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1141–42 (N.D. Cal. 2018). 3Commas "automatically makes trades on Cryptocurrency exchange platforms when certain pre-determined conditions are satisfied." (Dkt. No. 75 ¶ 3.) Moreover, it appears to provide a web platform for users to track their cryptocurrency balances. (*Id.* ¶ 22.) 3Commas is therefore analogous to other software deemed services under the CLRA. *See In re Yahoo!*, 313 F. Supp. 3d at 1141–42. And since 3Commas does not explain how Estonia would protect the California Plaintiffs' rights under the CLRA, it has not met its burden to show that their rights would not be diminished in Estonia.[6] *See Am. Online*, 90 Cal. App. 4th at 10–11; *Verdugo*, 237 Cal. App. 4th at 151.

The forum selection clause cannot be enforced against the California Plaintiffs, so dismissal for *forum non conveniens* is only warranted if 3Commas shows that the public and private interest factors strongly outweigh Plaintiffs' chosen forum. *See Ayco Farms*, 862 F.3d at 950. 3Commas has not attempted to make such a showing. It does not argue, for instance, that the relevant witnesses and evidence are in Estonia. *See id.* Accordingly, the California Plaintiffs' claims will not be dismissed for *forum non conveniens*.

**2. Non-California Plaintiffs**

The story is different for the non-California Plaintiffs, as they have not met their burden

---

[6] Even if Plaintiffs had the burden to show that enforcement of the forum selection clause would diminish their substantive rights, they would have carried that burden, for the reasons discussed above.

to show unenforceability of the forum selection clause. Starting with the first *M/S Bremen* exception, they do not argue the clause is invalid due to fraud or overreaching. Second, they cannot rely on California's public policy concerning the CLRA or consumer class actions, since that public policy applies only to "California resident plaintiffs." *See Doe 1*, 552 F.3d at 1084; *N.Z.*, 2025 WL 1122493, at *7 (citations omitted). Nor do they identify any other relevant public policy. Third, the non-California Plaintiffs have not established that they would be deprived of their day in court in Estonia. While they worry that the statute of limitations might have run on their claims, they assumed that risk by "violat[ing] a contractual obligation." *See Advanced China Healthcare*, 901 F.3d at 1091 (quoting *Atl. Marine*, 571 U.S. at 66 n.8). And while Estonia's representative action procedures might diminish the rights of absent putative class members, it would not have any effect on the present non-California Plaintiffs. *See Wong v. PartyGaming Ltd.*, 589 F.3d 821, 829 (6th Cir. 2009) ("Plaintiffs have not alleged that they *could not* bring the suit in [Estonia], but only that they could not bring it in class form."); *Losson v. Union des Associations Europeennes de Football*, No. 23-CV-06500-JSC, 2024 WL 3406987, at *3 (N.D. Cal. July 11, 2024).

Finally, the non-California Plaintiffs have not shown that the public interest factors "overwhelmingly disfavor" enforcement of the forum selection clause. *See Atl. Marine*, 571 U.S. at 67. The forum selection clause is paired with a choice of law clause favoring Estonian law, so Estonian courts will be more familiar with the governing law. (*See* Dkt. No. 20-13 ¶ 23.7.) Relatedly, California does not have a strong interest in resolving the disputes of non-residents. While the non-California Plaintiffs raise concerns about breaking the litigation into "parallel proceedings" (Dkt. No. 87 at 20), that is not part of the public interest analysis. Instead, it falls under the final private interest factor, "practical problems that make trial of a case easy, expeditious and inexpensive," which is deemed to weigh entirely in favor of dismissal. *See Ayco Farms*, 862 F.3d at 950 (citation omitted); *Atl. Marine*, 571 U.S. at 64.

Because the non-California Plaintiffs have not shown that the forum selection clause is unenforceable as to them, their claims must be dismissed.

## IV. CONCLUSION

3Commas's motion is **GRANTED** as to the claims brought by non-California residents Shawn Mall, Benjamin Ferris, Bryan Chapman, Nandan Arora, Shafiq Rajani, Vijay Christopher, Marc Ashby, Vincent Van Buskirk, Lawrence Manickam, and Edmundo Pena. It is **DENIED** as to the claims brought by California residents Charles Freeman, Tigran Melkonyan, and Ari Shofet.

**IT IS SO ORDERED.**

Dated: November 19, 2026

RITA F. LIN
United States District Judge